Cynthia MYERS, Plaintiff–Appellant,

v.

Karen HASARA and Gail Danner, Defendants–Appellees.

No. 99–2680.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 2000

Decided Sept. 5, 2000

Rehearing En Banc Denied Oct. 17, 2000

James P. Baker (argued), Springfield, IL, for Plaintiff–Appellant.

Robert M. Rogers, City of Springfield, Bradley B. Wilson (argued), Corporation Counsel, Springfield, IL, for Defendants–Appellees.

Before WOOD, Jr., KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

At the behest of its mayor, the City of Springfield suspended health inspector Cynthia Myers for comments she made regarding an open-air produce market that allegedly had been operating in violation of city and state law. Myers considered the punishment a violation of her constitutional rights and sued the mayor and health department director under 42 U.S.C. § 1983. The district court granted the defendants summary judgment on the merits and also ruled that the defendants were entitled to qualified immunity because the law regarding discipline of public employees for exercising their First Amendment rights was not clearly established at the time of Myers' suspension. However, because the district court resolved factual disputes in favor of the defendants, we hold that summary judgment was not warranted in this case. Furthermore, the standards concerning a public employer's authority to punish an employee for exercising rights guaranteed under the First Amendment were well established at the time of the events in question, and therefore qualified immunity was not justified. We reverse the grant of summary judgment and remand for trial.

I. HISTORY

Cynthia Myers worked as a supervisor and health inspector in Springfield's health inspection program. In that role, she ov-

ersaw the food inspection program, supervised five inspectors and performed routine health inspections of restaurants, markets and stores for compliance with city and state health codes. Myers' boss was Steve Hall, the head of the Public Health Department Environmental Division, who reported to defendant Gail Danner, the acting head of the Public Health Department. Danner reported to Keith Haynes, the director of community services, who reported directly to defendant Karen Hasara, the Springfield mayor.

Although several steps removed from the pinnacle of Springfield power, Myers had some supervisory duties in her job and was called on to participate in making division decisions and formulating policies. The Springfield health department, in addition to enforcing its own ordinances, had entered into an agreement with the state to enforce the state's health laws. Furthermore, the city's health ordinances were required to be no less stringent than the state's.

In 1995, a business called Parsons' Produce operated an open-air market in the parking lot of a local department store. Parsons' sold fruit and vegetables under an agricultural commodity permit, which permitted the sale of fresh produce, but not packaged food products. The restriction on selling packaged foods stems from the increased risk of infestation and contamination in an open-air market and the recognition that the consumer typically knows to inspect and wash fresh food, but may not do the same with packaged products.

Myers inspected Parsons' Produce in 1995 and found that it was selling packaged food products in an open-air market in violation of state and local laws. Of the six businesses operating under an agricultural commodity permit in the city, only Parsons' sold packaged foods. Myers filed her report with Danner and Hall, who visited Parsons' and confirmed Myers' finding. Hall voiced concerns to Danner and Haynes about Parsons', which led to a meeting with the state health department, which then formally notified Haynes that Parsons' was in violation of state health laws. The city's legal department notified Haynes that Parsons' was in violation of city and state health laws, and that the city ordinance could not be amended to allow Parsons' to continue to operate as it was without losing state funding for the program. At the same time, Hall sent Haynes a memorandum encouraging the enforcement action against Parsons'. Hasara took office in 1995 and was informed of the situation with Parsons'. Several other meetings took place over the course of 1995, but no action was taken against Parsons' to stop it from selling packaged food products. Parsons' closed for the season in the fall of 1995.

In 1996, Parsons' reopened and expanded into a second location at a local mall. Myers again inspected its facility. Myers found that Parsons' continued to sell packaged food products without the proper license, and reported this finding to Danner. Knowing that it was operating in violation of the permit, Myers refused to act on its application for a new agricultural commodity permit. Hall supported Myers' position and refused to approve the permit application. Danner, however, acting on the directions of her superiors, approved the permit and informed Myers that she did not need to take any further action regarding Parsons'. The defendants claim that they gave Myers a clear directive to have no further involvement with Parsons', but Myers disputes this factual contention.

Hasara, Danner and Haynes met with state health officials in May 1996 and discussed the Parsons' permit situation. Hasara believed Parsons' was not violating the law and voiced support for Parsons'. State health officials disagreed, but allowed that it was a local matter and said the state health department would not interfere. Hasara instructed Danner and Haynes to allow Parsons' to operate as it had before. Myers had no other involvement with the permit issue, but responded

to two complaints—one in May, the other in July—regarding Parsons'. Parsons' complained to Haynes that Myers was harassing it. Haynes investigated, but found no evidence to support the complaint.

Later in May, the local newspaper published an article concerning Parsons' and the health inspections, reporting that the market continued to operate in violation of city and state health codes. On May 30, while inspecting a restaurant at the mall where Parsons' operated one of its markets, Myers and another health inspector met with an assistant manager of the mall. Myers asked the manager whether he had seen the newspaper article, to which he responded that he had. In response to the manager's questions, Myers said that Parsons' was in violation of its permit and the city had decided to take no action against it. The mall manager was concerned about the mall's potential liability for health dangers caused by one of its tenants, and Myers indicated that she thought landlords could be held liable for the actions of their tenants.

Jeff Parsons, the owner of Parsons' Produce, soon found out about Myers' conversation with the mall manager, and complained to the mayor's office. Hasara wanted to fire Myers for expressing views contradictory to the city's policy on the issue, but Danner, Haynes and the city personnel director felt that termination was unwarranted. Hall also objected to disciplinary action against Myers. Instead, Myers was charged with failing to obey a reasonable directive and a hearing was held on the charge, at which Danner presided. On June 21, 1996, Myers was suspended for five days. No other action was taken against her.

Myers filed a two-count complaint against Hasara and Danner, alleging deprivations of her First and Fourteenth Amendment rights. After discovery, the defendants moved for summary judgment on the grounds that Myers' comments to the mall manager did not involve a matter of public concern, the city's interest in effective health inspection administration outweighed Myers' First Amendment rights and, in any event, Danner and Hasara were entitled to qualified immunity. The district court, applying the test for public-employee speech established in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), agreed on all three grounds and granted the defendants summary judgment. This appeal followed.

## II. ANALYSIS

■ We review *de novo* a grant of summary judgment, *see Weicherding v. Riegel*, 160 F.3d 1139, 1142 (7th Cir.1998), as well as a district court's decision that a defendant is entitled to qualified immunity. *See Forman v. Richmond Police Dep't*, 104 F.3d 950, 956–57 (7th Cir.1997). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Pickering *Balancing*

■ In her complaint, Myers alleged that she had a protected First Amendment right to make the comments she did to the mall manager regarding Parsons' permit situation and the city's policy of not enforcing the relevant ordinance. The Supreme Court has long held that a public employee maintains a First Amendment right to speak out on matters of public concern even though she works for the govern-

ment. *See Pickering*, 391 U.S. at 568, 88 S.Ct. 1731; *see also Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A public employee can be punished for exercising that right only if the facts of the case, as reasonably known to the employer, indicate that the employer's interest in promoting efficiency of public services outweighs the employee's interest in free speech. *See Waters v. Churchill*, 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Courts after *Pickering* have engaged in a two-part analysis to determine whether the "interests of the [employee], as a citizen, in commenting upon matters of public concern" outweighed the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

### 1. Matters of Public Concern

■ In *Hulbert v. Wilhelm*, 120 F.3d 648, 653 (7th Cir.1997), we re-stated the *Pickering* analysis as a three-part inquiry, although still addressing the core concern identified in *Pickering*. We held that the first part of *Pickering* sought to determine (1) whether the speech would be protected if uttered by a private citizen and (2) whether the speech was more than an unprotected "personal employee grievance." *Hulbert*, 120 F.3d at 653. If so, then we would consider the speech to meet the test for speech by a citizen on a matter of public concern. *See id.* A number of factors are relevant to this analysis including the content, form and context of the remarks, *see Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684, and whether the remarks can fairly be characterized as relating to issues of "political, social, or other concern to the community." *Id.* at 146, 103 S.Ct. 1684.

The district court held that the subject of Myers' comments was not a matter of public concern. We disagree. It is important to good government that public employees be free to expose misdeeds and illegality in their departments. Protecting such employees from unhappy government officials lies at the heart of the *Pickering* cases, and at the core of the First Amendment. For example, in *Marshall v. Porter County Plan Commission*, 32 F.3d 1215, 1218 (7th Cir.1994), the plaintiff, an employee in the building inspector's office, told the county planning commission that required inspections were not being done and provided a list showing that half of the required inspections had not been performed. The commission took no action, but later fired her in part because of her complaints regarding the building inspections. We held that the activities about which the plaintiff complained "were the type that result in the misuse of public funds and trust. These were not employment disputes or criticisms of the way that only [plaintiff's] job was affected." *Id.* at 1219–20. As a matter of law, we found these comments to be about matters of public concern. *Id.* at 1220.

Myers' comments to the mall manager are analogous. The city had a duty to enforce both its own and the state's food-inspection laws. There is no doubt that the inspection laws were valid and routinely enforced and that Parsons' practice of carrying packaged food products violated its permit. For whatever reason, the mayor and department head had decided not to enforce the law against Parsons' despite the city's duty to do so. Food-inspection rules, even ones that do not threaten cataclysmic harm, serve to protect the public health from risks of contamination. Like the plaintiff in *Marshall*, Myers found it objectionable that her department would refuse to enforce the law. The content of her comments to the mall manager involved a matter of public concern.

■ Following *Hulbert*, we find that Myers' criticism of the city for turning a blind eye to a known permit violation and potential health risk would have been protected if uttered by a private citizen and was more than a personal employee grievance. In fact, it bore no relation to the

gripes about office policies, scheduling and personnel decisions like those at issue in *Connick,* where the Court held that such employee grievances were not matters of public concern. 461 U.S. at 148, 103 S.Ct. 1684. The district court, examining the "content" of Myers' remarks, found that because she focused on Parsons' licensing problem, she was concerned not with a public health hazard but with her own dispute with her supervisors. *Myers v. Hasara,* 51 F.Supp.2d 919, 926–27 (C.D.Ill. 1999). We disagree. Whistleblowing does not need to be limited to systemic charges of corruption to qualify as a matter of public concern. A specific violation of a law that creates a risk to public health, safety or good governance likewise is a matter of public concern. Myers knew of one such violation and reported it to an obviously concerned party who she knew would take action on it. The fact that "her exact language is directed specifically at Parsons'," *Myers,* 51 F.Supp.2d at 927, made sense considering that she perceived it to be a public health risk.

■ Furthermore, a "personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern." *Marshall,* 32 F.3d at 1219. Myers' disgust or frustration about the city's decision to ignore a health-code violation does not mean that her complaint was not a public concern. While the speaker's motivation is relevant to the *Pickering* analysis, it is not necessarily dispositive, *see Gregorich v. Lund,* 54 F.3d 410, 415 (7th Cir.1995); *Colburn v. Trustees of Indiana Univ.,* 973 F.2d 581, 587 (7th Cir.1992), and does not transform Myers' remarks into matters of private concern in this case. We disagree with the district court that she spoke "more as a disgruntled employee" or that her remarks in some way were a personnel grievance. We hold that the speech for which Myers was disciplined related to a matter of public concern, precluding summary judgment for the defendants on this issue.

### 2. The City's Interest

■ The district court found that the city's interest in "promoting efficient and effective public service outweighed Plaintiff's right to express herself." *Myers,* 51 F.Supp.2d at 928. However, in doing so, the district court resolved disputed issues of material fact in the defendant's favor, thereby rendering summary judgment improper. To answer the second part of the *Pickering* test, we have identified seven factors to consider. *See Kokkinis v. Ivkovich,* 185 F.3d 840, 845 (7th Cir.1999); *Wright v. Illinois Dep't of Children & Fam. Servs.,* 40 F.3d 1492, 1502 (7th Cir. 1994). Among those relevant to the summary judgment in this case are whether the speech created disharmony in the workplace and whether the employment relationship requires personal loyalty and confidence. *See id.* Both of these factors were influenced by the question of whether Myers had been given a clear directive not to discuss the issue further.

The district court disregarded this question rather than resolve it in Myers' favor. In the district court's opinion, the issue was irrelevant because Hasara reasonably believed that Myers had been given the order. We disagree. Myers was suspended for violating a superior's order, an offense that undoubtedly raises a legitimate governmental interest. However, the parties dispute whether Myers was given this order. If she was not, then her remarks to the mall manager were not in violation of a clear directive, and the governmental interest in having employees follow orders and accurately portray the agency's policies was not implicated. Therefore, this issue goes to the heart of Myers' complaint and should have been resolved in her favor for purposes of summary judgment.

■ The district court further found that Myers' actions created disharmony because city officials disagreed about how or whether she should be punished. *Myers,* 51 F.Supp.2d at 928. This analysis treats the "disharmony" factor in a *Picker-*

*ing* claim in a way that could prevent plaintiffs from ever prevailing. The disharmony that undermines the government interest in efficient and effective service stems from the content of the speech itself, such as by undermining public confidence in the agency or contradicting the agency's public message. We would imagine that in most *Pickering* claims, government officials debated the proper punishment for the speaker. This cannot be the source of the relevant disruption or disharmony since it would weigh against every plaintiff. Just as disharmony was present when the superiors discussed Myers' punishment, it would have been absent had they not sought to punish her.

■■■ Another factor to consider in balancing the government's interest is whether the time, place or manner of the employee's speech disrupted the government's provision of services. *See Coady v. Steil*, 187 F.3d 727, 731 (7th Cir.1999); *Wright*, 40 F.3d at 1502. This analysis questions whether the employee could have aired her concerns at a better time or in a better way and created unnecessary confusion or turmoil by expressing herself in the way she did. *Cf. Khuans v. School Dist.* 110, 123 F.3d 1010, 1017 (7th Cir.1997) (holding that teacher's complaints disrupted daily routine of school); *Breuer v. Hart*, 909 F.2d 1035, 1040 (7th Cir.1990) (explaining that complaint was filed in an appropriate manner, even though it legitimately addressed a matter of public concern).

The district court applied this factor in the defendants' favor because it found that Myers expressed her concerns to a limited audience that could not change city policy but could render economic harm to Parsons'. However, the fact that she spoke to a limited audience was not particularly disruptive to the government. In fact, her actions seemed discreet, in that she could have chosen far more disruptive forums, such as writing a letter to the local newspaper or appearing at a city council meeting. By Myers' action, the mall management and Parsons' may have complained to the city about the permit problem, but this seems a very limited form of disruption. Also, the district court noted that the mall manager believed Myers' comments were motivated by frustration with the city. This latter conclusion merely speaks to Myers' intent and is irrelevant to whether Myers chose the appropriate time, place and manner for her remarks. Assuming that Myers chose this forum, rather than had it chosen for her by the mall manager, it seems to be the least disruptive forum she could have picked. In addition, there were several factual questions regarding the conversation Myers had with the mall manager that the district court resolved against Myers, rather than in her favor as required on a summary judgment motion.

### B. Qualified Immunity

■■■ Finally, the district court found that Hasara and Danner were entitled to qualified immunity. A government official is entitled to immunity from suit when performing discretionary functions unless the district court determines that (1) the plaintiff alleged a constitutional injury, and (2) the legal standards applicable to the injury were clearly established at the time. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Rakovich v. Wade*, 850 F.2d 1180, 1210 (7th Cir.1988). The district court held that Myers failed to allege a constitutional injury and dismissed the suit on the basis of qualified immunity. Because we reverse the grant of summary judgment on the ground that Myers successfully raised a question of material fact regarding her First Amendment claim, we likewise reverse the court's finding that she failed to meet the burden of pleading a constitutional injury.

■■■ The district court further found that Hasara suspended Myers because she "had disobeyed a directive in violation of civil service rule 48(e)." In the district court's view, the constitutional standards

regarding a government employer's right to discipline an employee for engaging in protected speech in disregard of a supervisor's direct order were not clearly established in 1996. However, several cases in this Circuit prior to 1996 discussed in detail the balancing of interests between a government employer's right to require obedience, confidentiality and silence against an employee's First Amendment right to speak on matters of public concern. *See, e.g., Conner v. Reinhard,* 847 F.2d 384, 390–91 (7th Cir.1988); *O'Brien v. Town of Caledonia,* 748 F.2d 403, 406–07 (7th Cir.1984); *Hanneman v. Breier,* 528 F.2d 750, 754 (7th Cir.1976). For instance, *O'Brien* involved police department regulations that prohibited all public criticism of the department and required police officers to keep all department business confidential. 748 F.2d at 405. We held that *Pickering* demanded the department weigh the police officer's individual right to speak on matters of public concern against the department's valid right to enforce the challenged rules before disciplining an officer for violating those rules. *Id.* at 406–07. Other cases have similarly required *Pickering* analysis even though the stated reason for an employee's discipline was insubordination rather than the content of the employee's speech. *See generally Dishnow v. School Dist. of Rib Lake,* 77 F.3d 194 (7th Cir.1996); *Warzon v. Drew,* 60 F.3d 1234 (7th Cir.1995). It was, therefore, clear in June 1996 that government employees had a First Amendment right to speak on matters of public concern that must be weighed against the employer's right to punish insubordination. Hasara and Danner cannot claim not to have known that disciplining Myers under these circumstances would not implicate her right to free speech.

### III. Conclusion

We hold that as a matter of law, Myers' comments regarding the city's decision not to enforce its health-code permit regulations focused on matters of public concern, and that because questions of material fact remain, summary judgment was inappropriate. This decision does not decide the merits of the factual issues one way or the other, but leaves factual determinations to a jury or a bench trial. Finally, Hasara and Danner were not entitled to qualified immunity. We therefore REVERSE the district court's grant of summary judgment and REMAND the case for further proceedings.